IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CLOUD49, LLC, | § | No. 1:22-CV-00229-DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| RACKSPACE TECHNOLOGY, INC., | § | |
| and CAPGEMINI AMERICA, INC., | § | |
| | § | |
| Defendants. | § | |
| _____ | § | |

ORDER: (1) ADOPTING REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE; AND (2) DENYING PARTIAL MOTION TO DISMISS

Before the Court is a Report and Recommendation (the "Report") (Dkt. # 60) submitted by United States Magistrate Judge Mark Lane. The Court finds this matter suitable for disposition without a hearing. After reviewing the Report, the Court **ADOPTS** Judge Lane's recommendations, and **DENIES** Defendant Rackspace Technology, Inc.'s ("Rackspace") Partial Motion to Dismiss (Dkt. # 46).

BACKGROUND

Plaintiff Cloud49, LLC ("Cloud49") is a cloud computing company based out of Austin, Texas. (Dkt. #38 at ¶10.) Cloud49 had been in business for almost a decade at the time of the events at issue. (Id.) Cloud49 provided its cloud management services to the Texas Department of Information Resources ("DIR"),

a state agency providing information technology services to state agencies, beginning in 2015.  (Id. at ¶¶11-12.)  Cloud49 worked on behalf of DIR for a five-year period.  (Id. at ¶14.)

In 2019, DIR reorganized its methods for contracting data center services, issuing requests for offers on seven of its data center services, including "Texas Private Cloud," "Managed DCS Network," "DCS Security Operations Services," "Technology Solutions Services," "Public Cloud Manager," "Print, Mail, and Digitalization," and "Mainframe Services."  (Id.)  Companies submitting offers for certain services were barred from submitting offers for others.  (Id.)  Defendant Capgemini America, Inc. ("Capgemini") was contracted by DIR to serve as the "Multi-sourcing Services Integrator" ("MSI") to ensure the services rendered by the various providers would function together in a usable form for DIR's state agency customer base.  (Id. at ¶15.)  Symbio Ecosystems ("Symbio") was contracted by DIR to help oversee and conduct the bidding process on the Public Cloud Manager Contract.  (Id.)

DIR issued its First Request for Offer on the Public Cloud Manager Contract on October 25, 2019, and held a solicitation conference on November 13, 2019, which was attended by thirty-six separate vendors.  (Id. at ¶16.)  Both Cloud49 and Rackspace bid for the public cloud manager contract.  (Id.)  DIR graded each vendor based on four criteria: technical solution and service delivery,

experience and past performance, transition, and pricing. (Id. at ¶17.) Cloud49 alleges that Capgemini, Symbio, and Rackspace conspired for Rackspace to be awarded the contract by advising DIR to conduct additional rounds of bidding, even though Cloud49 significantly outscored Rackspace in the first two rounds of bidding. (Id. at ¶¶17-20.) Rackspace narrowly outscored Cloud49 in the third round and won the contract. (Id. at ¶21.)

Cloud49 alleges that it lost the Public Cloud Manager contract because of Defendants' agreement to manipulate the bidding process in Rackspace's favor and subsequent acts meant to deny Cloud49 a fair bidding process. (Id. at ¶24.) Specifically, Cloud49 alleges that Defendants' misconduct resulted in Cloud49's pricing to exceed Rackspace's pricing (id. at ¶¶28-33) and Rackspace's experience and past performance score to exceed Cloud49's experience score. (Id. at ¶¶34-45.)

Regarding the pricing, Cloud49 alleges that between the first and second bids, Capgemini and Symbio persuaded DIR to exclude the charges for Microsoft software and services from the second bid, believing that changing the terms of the bid would provide Rackspace a means to beat Cloud49 that would be otherwise impossible. (Id. at ¶¶29-30.) Cloud49 further alleges that during a due diligence call, Symbio intentionally misrepresented the terms of the contract related to these services, inducing Cloud49 to submit a higher bid in reliance upon

the representations, while Rackspace was given accurate representations of the contract terms and was therefore able to submit a lower bid. (Id. at ¶¶31-33.)

Regarding the score, Cloud49 alleges that Rackspace's score for experience and past performance increased in the final round of bidding as the result of Defendants' misconduct, and, but for this misconduct, Cloud49's score would not have gone down, and it would have been awarded the contract. (Id. at ¶34.) Cloud49 alleges that Capgemini used its position as the MSI to misrepresent the information maintained by Cloud49 regarding current and future data usage for the purpose "of discrediting Cloud49 and steering the contract towards Rackspace." (Id. at ¶¶35-36.) Cloud49 alleges that as a result of these misrepresentations, DIR reduced its scores in the final round. (Id. at ¶37.) Cloud49 further alleges that Capgemini and Symbio failed to contact Cloud49's references during the procurement process and thus "committed fraud by non-disclosure by failing to include information regarding Cloud49's references" in their reports to DIR. (Id. at ¶38.)

Additionally, Cloud49 alleges that Rackspace hired former employees of Cloud49 and induced them to breach their nondisclosure agreements ("NDAs"). (Id. at ¶¶46-51.) Cloud49 further alleges that as a result of these breaches, Rackspace obtained access to Cloud49's Proprietary Information "including software developed by Cloud49, knowledge of which software to use for

4

implementations, templates and other protocols useful for accelerating and managing cloud 'instances' based on customer preferences, methods for tracking and billing for use of cloud services, and other practices and procedures." (Id. at ¶50.) Cloud49 alleges that as a result of Rackspace's improper acquisition of this information, Rackspace was able to meet its initial obligations under the Public Cloud Manager Contract, and once this information had been obtained, Rackspace fired almost all of the former employees of Cloud49. (Id.)

Cloud49 filed suit against Rackspace, Capgemini, and Symbio.[1] (See Dkt. #38.) Against Rackspace, Cloud49 brought claims for violation of the Defense of Trade Secrets Act (id. at ¶¶77-82), tortious interference with existing contracts (id. at ¶¶83-89), tortious interference with prospective relations (id. at ¶¶90-95), and conspiracy (id. at ¶¶96-101).

On November 22, 2022, Rackspace filed a Partial Motion to Dismiss Cloud49's Third Amended Complaint, specifically, Cloud49's claims of tortious interference with prospective relations and conspiracy. (Dkt. #46.)  The motion was fully briefed and referred to Magistrate Judge Lane for his Report. On April 14, 2023, Judge Lane issued his Report, recommending that the Court deny Rackspace's Partial Motion to Dismiss. (Dkt. # 60.) On April 28, 2023,

---

[1] On May 1, 2023, Cloud49 dismissed all claims against Symbio with prejudice. (Dkt. #64.)

Rackspace timely filed Objections to the Report. (Dkt. # 63). On May 12, 2023, Cloud49 filed its Response to the Objections. (Dkt. # 65.)

## APPLICABLE LAW

The Court must conduct a de novo review of any of the Magistrate Judge's conclusions to which a party has specifically objected. See 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). The objections must specifically identify those findings or recommendations that the party wishes to have the district court consider. Thomas v. Arn, 474 U.S. 140, 151 (1985). A district court need not consider "[f]rivolous, conclusive, or general objections." Battle v. U.S. Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

Findings to which no specific objections are made do not require de novo review; the Court need only determine whether the Recommendation is clearly erroneous or contrary to law. United States v. Wilson, 864 F.2d 1219, 1221 (5th Cir. 1989).

DISCUSSION

In his Report, Judge Lane made the following findings: (1) Cloud49 has adequately pleaded its claim of tortious interference with prospective relations because Cloud49 has sufficiently alleged the causation and independently tortious elements; and (2) Cloud49 has adequately pleaded its conspiracy claim by alleging that Rackspace both benefitted from and was an active participant in the conspiracy. (Dkt. # 60.)

Rackspace has filed objections to the Report. (Dkt. # 63.) Specifically, Rackspace argues that: (1) Cloud49 failed to plausibly state a claim for tortious interference with prospective relations; and (2) Cloud49 failed to plausibly state a conspiracy claim. The Court addresses each objection in turn.

A. <u>Tortious Interference with Prospective Relations</u>

Rackspace first objects on the basis that Cloud49 failed to state a plausible claim for tortious interference with prospective relations. (Dkt. #63 at ¶¶3-9.) To establish a claim for tortious interference with prospective relations, a plaintiff must demonstrate: (1) a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4)

7

the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result.  Coinmach Corp. v. Aspenwood Apartment Corp., 417 S.W.3d 909, 923 (Tex. 2013).

        1.    Fraudulent Statement

Rackspace's first contention is that "the Report incorrectly utilized Cloud49's explanation as to why a statement was fraudulent to add language to the vaguely alleged statement so that it would then be fraudulent." (Dkt. #63 at ¶5.)  Rackspace argues that under Rule 9(b)'s heightened pleading standard for claims of fraud, Cloud49 is required to "separately 'specify the statements contended to be fraudulent' and 'explain why the statements were fraudulent'".  (Id. (citing Williams v. WMX Techs., Inc., 112 F.3d 175, 177 (5th Cir. 1997).)  Rackspace further argues that the Report "improperly conflates" the two requirements and resulted in "the unsupported addition of words to an alleged statement that—as pled—it did not contain." (Id. at ¶5.)

Rule 9(b) establishes a heightened pleading standard for fraud-based claims, requiring the underlying actual circumstances to be pled "with particularity"—the who, what, when, where, and how must be identified.  Fed. R. Civ. P. 9(b); Benchmark Elecs. v. J.M. Huber Corp., 343 F.3d 719, 724 (5th Cir. 2003).  "Particularity" varies with the circumstances of individual cases, but

specificity of the time, place, contents, and the identity of the person making the statements is generally required under Rule 9(b).  Benchmark, 343 F.3d at 724.

The Court rejects Rackspace's contention.  Cloud49 clearly identifies the false statements made by Rackspace and why they were fraudulent.  (Dkt. #38 at ¶40 ("Rackspace claimed to have "proven expertise"; however, Rackspace had never previously engaged or obtained any government contract for public cloud management.").)  As such, the Magistrate Judge properly concluded that Cloud49's complaint was clear and satisfied the heightened pleading standard under Rule 9(b).

    2.  Materiality of "Proven Expertise" Statement

Rackspace's second contention is that "the Report incorrectly determined that Cloud49 sufficiently alleged facts demonstrating that the 'proven expertise' statement was material to DIR's scoring decisions."  (Dkt. #63 at ¶7.)  The Report concluded that "Cloud49 pleaded that Rackspace should have been eliminated from the bidding process based on its lack of experience and that all three Defendants realized Rackspace's lack of experience was a problem that must be concealed."  (Dkt. #60 at ¶14 (citing Dkt. #38 at ¶¶39-40).)  Rackspace argues that "the first allegation is a conclusion not supported by any additional factual allegations as required under the plausibility standard" and that "the second allegation relates to [Rackspace's] alleged state of mind—not whether DIR would

9

consider an applicant's conclusory statement that it had "proven experience" material in scoring an application." (Dkt. #63 at ¶7.)

To establish a claim for fraud, a plaintiff must demonstrate: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. Johnson v. World Alliance Fin. Corp., 830 F.3d 192, 198 (5th Cir. 2016). A false statement is material only if a reasonable person would attach importance to and be induced to act on the information. City of Clinton v. Pilgrim's Pride Corp., 632 F.3d 148, 153 (5th Cir. 2010).

The Court disagrees with Rackspace's argument regarding the first allegation. While Rackspace is correct in asserting that "Cloud49 does not allege what experience was required in order to be considered for the public cloud manager contract" (Dkt. #63 at ¶7), Rackspace is incorrect in its assertion that the conclusion "that Rackspace should have been eliminated from the bidding process based on its lack of expertise" (Dkt. #60 at ¶14) is unsupported by additional factual allegations. Cloud49 specifically outlined the frequently utilized criteria of DIR for eliminating vendors from the bidding process. (Dkt. #38 at ¶41.) Cloud49

10

additionally provides a detailed explanation of why Rackspace should have been eliminated based on these criteria.  (Id.)

The Court also rejects Rackspace's argument regarding the second allegation.  Rackspace incorrectly concludes that the Report's conclusion "that all three Defendants realized Rackspace's lack of expertise was a problem that must be concealed" (Dkt. #38 at ¶14) related to "Defendants' alleged state of mind," but not to "whether DIR would consider an applicant's conclusory statement that it had 'proven experience' material in scoring an application."  (Dkt. #63 at ¶7.)  According to the Complaint, DIR informed each of the bidding vendors of the four criteria that they would be scored on, including experience and past performance.  (Dkt. #38 at ¶17.)  The experience and past performance criteria were worth 30 percent of the total score.  (Id.)

3. Actionability of "Proven Experience" Statement

Rackspace's third contention is that "the Report incorrectly concluded that the 'proven experience' statement was an actual factual statement rather than an opinion because, 'in context, the representation communicated that Rackspace had successfully managed a public cloud'".  (Dkt. #63 at ¶8.)

Whether a statement is an actionable statement of fact or merely one of opinion often depends on the circumstances in which a statement is made.  LVI Facility Servs. v. Watson Rd. Holding Corp., 2013 WL 5519588 (W.D. Tex. 2013)

(citing Matis v. Golden, 228 S.W.3d 301, 307 (Tex.App.—Waco 2007, no pet.). Relevant circumstances include the statement's specificity, the speaker's knowledge, the comparative levels of the speaker's and the hearer's knowledge, and whether the statement relates to the present or the future.  Id.  Even an opinion may be actionable if: (1) it is intertwined with direct representations of present facts; (2) the speaker has knowledge of its falsity; (3) it is based on past or present facts; or (4) the speaker has special knowledge of facts that will occur or exist in the future.  Id.

The Court again disagrees with Rackspace's contention.  The Report properly concluded that a claim of "proven expertise," in context, is indicative of experience in public cloud management.  (Dkt. #65 at ¶7.)  The context in which this alleged statement was made is an essential component in determining its actionability, and as such was properly considered by the Magistrate Court.

4. Cloud49's Failure to Satisfy Rule 9(b)

Rackspace's fourth and final contention is that "the Report incorrectly concluded that Cloud49 satisfied Rule 9(b) with respect to its allegation that Rackspace misrepresented in its bid the intended organization, key personnel assignments, and the subcontractors that it intended to use." (Dkt. #63 at ¶9.) Rackspace argues that Cloud49 "fail[ed] to provide even a single example to support its claim that Rackspace falsely represented the personnel it intended to

use demonstrates that Cloud49 has not met its burden to take its claim beyond merely conceivable." (Id.)

What constitutes particularity may differ with the acts of an individual case, but a plaintiff must plead the contents of the false representations at a minimum. Benchmark, 343 F.3d at 724. Whether a plaintiff has sufficiently pled the contents is dependent upon whether enough facts are pled to state a claim that is plausible, not merely conceivable, on its face. Id. Rule 9(b) generally requires specificity of the time, place, contents, and the identity of the person making false representations. Id.

The Court finds that the Report correctly concluded that "[w]hile Cloud49 did not plead the exact language that was used, it did plead the time, place, speaker, and contents of the false representations." (Dkt. #60 at ¶15.) Under the standard outlined in Benchmark, Cloud49 has satisfied the requirements of Rule 9(b).

Based on the foregoing, the Court will overrule Rackspace's objections to the Magistrate Judge's Report concerning tortious interference with prospective business relations. Upon de novo review, the Court finds that Cloud49 has sufficiently alleged the claim of tortious interference with prospective relations.

B.   Conspiracy

Rackspace additionally objects to the Report's conclusion "that Cloud49 adequately pled a conspiracy claim" because "the Third Amended Complaint contained sufficient allegations that Rackspace both benefitted from the conspiracy and was an active participant." (Dkt. #63 at ¶10.)  Rackspace argues that "the Report improperly applies the plausibility standard to reach its conclusion" because "Cloud49 fail[ed] to plausibly allege Rackspace's participation in the conspiracy by supplying false representations to DIR" and thus "fails to sufficiently plead any factually suggestive, non-conclusory allegations to support the conspiracy claim." (Id.)

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Id. Where the facts pled prevent the court from inferring more than the mere possibility of misconduct, the complaint has alleged but not shown that the pleader is entitled to relief.  Id. at 679.

To establish a civil conspiracy claim, a plaintiff must demonstrate that the essential elements are met: (1) two or more persons; (2) an object to be

accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. Homoki v. Conversion Servs., Inc., 717 F.3d 388, 404-05 (5th Cir. 2013).

The Court finds the Report properly concluded that Cloud49 adequately pled its conspiracy claim, and alleges that Rackspace both benefitted from and was an active participant in the conspiracy. (Dkt. #60 at ¶19.) Each of the elements of civil conspiracy are alleged in Cloud49's complaint: two or more persons- Defendants Rackspace, Capgemini, and Symbio; an object to be accomplished- to cause Rackspace to be awarded the Public Cloud Manager Contract; a meeting of the minds on the object or course of action- to hide and overcome Rackspace's inability to perform the Public Cloud Manager Contract; one or more unlawful, overt acts- through tortious interference and trade secret misappropriation; and damages as the proximate result- Rackspace being awarded the contract over Cloud49. (Dkt. #38 at ¶98.)

Based on the foregoing, the Court will overrule Rackspace's objections to the Magistrate Judge's Report concerning Cloud49's civil conspiracy claim. Upon de novo review, the Court finds that Cloud49 has sufficiently alleged the claim of civil conspiracy. Thus, on the record before the Court, upon de novo review, the Court overrules Rackspace's objections.

CONCLUSION

Based on the foregoing, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation (Dkt. # 60) as the opinion of the Court, and **DENIES** Rackspace's Partial Motion to Dismiss (Dkt. # 46).

**IT IS SO ORDERED.**

**DATE:** Austin, Texas, June 29, 2023.

_____
David Alan Ezra
Senior United States District Judge